ACCEPTED
13-15-00167-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
11/13/2015 1:37:40 PM
Dorian E. Ramirez
CLERK

No. 13-15-00167-CV

_____

IN THE COURT OF APPEALS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
11/13/2015 1:37:40 PM
DORIAN E. RAMIREZ
Clerk

FOR THE THIRTEENTH DISTRICT OF TEXAS

AT EDINBURG, TEXAS

_____

HIDALGO COUNTY, TEXAS

APPELLANT

V.

DORA HERRERA, ET AL,

APPELLEES

_____

Original Appellate Proceeding from the County
370th District Court - Hidalgo County, Texas

_____

APPELLEES' AMENDED REPLY BRIEF

_____

SNIDER LAW FIRM, PLLC

Wyatt D. Snider
State Bar No. 24039185
3535 Calder, Suite 300
Telephone: (409) 924-9595
Facsimile: (409) 924-0808
**ATTORNEY FOR APPELLEES**

## IDENTITY OF PARTIES AND COUNSEL

PARTIES                                                     COUNSEL

Appellant:
Hidalgo County, Texas                          Preston Henrichson
                                                               Law Offices of Preston Henrichson
                                                               222 W. Cano
                                                               Edinburg, Texas 78539
                                                               (956)383.3535 - Telephone
                                                               (956)383.3585 - Facsimile


Appellees:
Dora Herrera, Individually & as Representative of the Estate of Reynaldo Herrera, Deceased, Eric Herrera, Efren Herrera, Michael Herrera, Jessica Herrera Rodriguez, Celia Herrera, Vanessa Herrera, Veronica Herrera Rodriguez Herrera and Rey Herrera


                                                               Wyatt D. Snider
                                                               Snider Law Firm, PLLC
                                                               3535 Calder, Suite 300
                                                               Beaumont, Texas 77706
                                                               Trial Counsel and Appellate Counsel for Appellees

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL .................................... ii

TABLE OF CONTENTS ........................................ iii

APPENDIX ............................................ iv

INDEX OF AUTHORITIES ........................................ v

STATUTES AND RULES ........................................ vi

REPLY ISSUES PRESENTED ........................................ vii

SUMMARY OF THE ARGUMENT ........................................ 2

STATEMENT OF FACTS ........................................ 2

STANDARD OF REVIEW ........................................ 7

ARGUMENT AND AUTHORITIES ........................................ 7

**Reply Issue 1:**     **Appellees' injuries do arise from the operation and use of a County motor driven vehicle and therefore, there is a waiver of Hidalgo County's sovereign immunity** .................... 7

**Reply Issue 2:**     **Hidalgo County is not entitled to immunity under the emergency exception because Hidalgo County's agent's actions were taken with conscious indifference and reckless disregard for the safety of others** ........................................ 13

**Reply Issue 3:**     **Hidalgo County is liable because Deputy Ortega is not entitled to official immunity because he was not acting in good faith** . 16

**Reply Issue 4:**     **Dr. Richard Weinblatt is a qualified expert and his Report is relevant, reliable and not conclusory** .................... 18

PRAYER ........................................ 19

CERTIFICATE OF SERVICE ........................................ 20

CERTIFICATE OF COMPLIANCE ........................................ 20

APPENDIX

1    Pursuit Driving Policies of Hidalgo County (HC00048-49)

2    Sheriff Trevino's Interoffice Memorandum (HC00051)

3    Lesson Plan for Emergency Police Driving Course (HC00053-62)

# INDEX OF AUTHORITIES

## CASES

*Cameron County v. Alvarado* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    900 S.W.2d 874 (Tex.App.–Corpus Christi, 1995)

*The City of Dallas v. Hillis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    308 S.W.3d 526, 534 (Tex. App. - Dallas, 2010 review denied)

*City of San Augustine v. Parrish* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    10 S.W.3d 734 (Tex. App--Tyler 1999, pet dism'd w.o.j)

*Hampton v. Univ. of Texas M.D. Anderson Cancer Center* . . . . . . . . . . . . . . . . . . . 7
    6 S.W.3d 627, 631 (Tex. App– Houston [1st Dist.] 1999, no pet.h.)

*Midland v. Sullivan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    33 S.W.3d 1 (Tex. App. - El Paso 2000)

*Schronk v. City of Burleson* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    387 S.W.3d 692 (Tex. App. - Waco 2009, pet. denied)

*State v. Smith* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    335 S.W.3d 706, 714 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd)

*Tarrant County Hosp. Dist. v. Henry* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    52 S.W.3d 434 (Tex.App.–Fort Worth, 2001, no pet.h.)

*Teague v. City of Dallas* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    344 S.W.3d 434 (Tex. App. - Dallas 2011, review denied)

*Travis v. City of Mesquite* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,8,9,11
    830 S.W.2d 94 (Tex. 1992)

*Waring v. Wommack* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    945 S.W.2d 889, 893 (Tex. App. - Austin, no writ.)

*Wise Regional Health System v. Brittain* . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    268 S.W.3d 799 807-08 (Tex. App. - Fort Worth 2008, no pet.)

## STATUTES AND RULES

Tex. Trans. Code § 546.005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Reply Issue 1:    Appellees' injuries do arise from the operation and use of a County motor driven vehicle and therefore, there is a waiver of Hidalgo County's sovereign immunity.

Reply Issue 2:    Hidalgo County is not entitled to immunity under the emergency exception because Hidalgo County's agent's actions were taken with conscious indifference and reckless disregard for the safety of others.

Reply Issue 3:    Hidalgo County is liable because Deputy Ortega is not entitled to official immunity because he was not acting in good faith, based on the same evidence established above.

Reply Issue 4:    Dr. Richard Weinblatt is a qualified expert and his Report is relevant, reliable and not conclusory.

No. 13-15-00167-CV

IN THE COURT OF APPEALS

FOR THE THIRTEENTH DISTRICT OF TEXAS

AT EDINBURG, TEXAS

HIDALGO COUNTY, TEXAS

APPELLANT

V.

DORA HERRERA, ET AL,

APPELLEES

Original Appellate Proceeding from the County
370th District Court - Hidalgo County, Texas

APPELLEES' REPLY BRIEF

TO THE HONORABLE COURT OF APPEALS:

Appellees, Dora Herrera, Individually & as Representative of the Estate of Reynaldo Herrera, Deceased, Eric Herrera, Efren Herrera, Michael Herrera, Jessica Herrera Rodriguez, Celia Herrera, Vanessa Herrera, Veronica Herrera Rodriguez Herrera and Rey Herrera, submit this Reply Brief, and would respectfully show the Court the following:

1

## SUMMARY OF THE ARGUMENT

Hidalgo County, through a reckless and dangerous chase prosecuted by one of its officers, is liable under the Texas Tort Claims Act for the wrongful death of Reynaldo Herrera, Deceased, who was father and spouse to Appellees. The accident "arises out of the operation of a motor vehicle" according to the Texas Supreme Court case of *Travis v. Mesquite*. Further, Hidalgo County is not entitled to immunity under the emergency exception because Hidalgo County's officers were acting with conscious indifference and reckless disregard for the safety of others. Hidalgo County is not entitled to official immunity because its agents were not acting in good faith. The trial Court properly denied Hidalgo County's Plea to the Jurisdiction because there was a fact issue on all necessary claims.

## STATEMENT OF FACTS

The incident that Appellees complain of occurred on the evening of May 26, 2010. (CR 22, 54, 137, 181, 204).[1] The events giving rise to this incident were initiated by Defendant, The City of Pharr, through the acts and/or omissions of its employee, Officer Emilio Gonzalez, who at all material times hereto was acting within the course and scope of his employment as a Pharr police officer. (CR 22, 54, 137, 204).

Officer Emilio Gonzalez on May 26, 2012 was a nine-year veteran of the Pharr Police Department. (CR 23, 54,137, 204). He was patrolling in a marked vehicle near Military Road and I Road in Hidalgo County, Texas. (CR 22, 54, 137, 204).

---

[1] Citations to the Clerk's Record will be cited to as (CR XX); Citations to the Supplemental Clerk's Record filed on August 7, 2015 by Hidalgo County will be cited to as (SCR Lopez Video); Citation to the Supplemental Clerk's Record filed on November 11, 2015 by Appellees will be cited to as (SCR Herrera Video); Citations to the Appendix attached to this Brief will be cited as follows (APX X).

Around 6:00 p.m. in the evening of May 26, 2010, Officer Gonzalez conducted a routine traffic stop. (CR 23,55,138,205). After the traffic stop the Pharr Police Department Officer headed west on Military Drive towards Pharr. (CR 23,55,138,205). As he approached I Road, the Pharr city limits, the Pharr Police Department Officer noticed a black Expedition traveling northbound on I Road. (CR 23,55,138,205). The black Expedition stopped at the stop sign located at the intersection of Military Road and I Road. (CR 23,55,138,205). As that vehicle stopped, the Pharr Police Department patrol officer continued westbound past I Road. (CR 23,55,138,205). As the officer passed the Expedition, Officer Gonzalez noticed the Expedition had dark tint material on the windows. (CR 23,55,138,205). The officer believed that based on visual observation only, without actual measurement, that the tint violated the statutes of the Texas Transportation Code. (CR 23,55,138,205). The Officer was not able to recognize any occupant in the Expedition. (CR 23,55,138,205).

The Officer then proceeded to make a u-turn to "go after" the Expedition as the Expedition turned to proceed eastbound on Military Road. (CR 23,55,138,205).

The Officer decided to begin pursuit of the Expedition, but not for drugs, weapons, or other contraband, but only for the misdemeanor violation of the vehicle's tinted windows being too dark. (CR, 23, 24, 55, 138, 205). Earlier the Officer had radioed the dispatcher that a vehicle was coming out of a high drug area; however, the Officer did not tell the dispatcher or notify his supervisor that he was pursuing the Expedition only for the tinted window violation. (CR 24,55,138,205). Later, the dispatcher or supervisor was advised that the pursuit was for a traffic violation and that the pursuit was outside the Pharr city limits (CR 24,55,56,138,139,205,206).

Despite police department policy procedures and orders, the pursuit continued and was approved even after the dispatcher or the supervisor was notified that the pursuit was

3

for a traffic violation only; that the Officer was exceeding the speed limit by more than ten miles per hour; and that the pursuit was outside the Pharr city limits. (CR 24,56,139,206).

The Officer pursued with his Pharr Police Department vehicle's bar lights and siren operating as he continued eastbound on Military Road. (CR 24,56,139,206). The black Expedition refused to stop and continued traveling at a high rate of speed, over 80 mile per hour. (CR 24,56,139,206). Despite his lack of knowledge of the Pharr Police Department pursuit policy, the officer continued to pursue into the city of Alamo, through the city of Alamo, and into the city of Edinburg. (CR 24,56,139,206). During this high speed pursuit for a misdemeanor violation, the black Expedition passed in no passing zones, disregarded stop signs and red lights and despite these dangers to the public - for a misdemeanor violation only - the police Officer continued the pursuit well outside the Pharr city limits. (CR 24,56,139, 206). Additionally during this pursuit the Pharr officer continually radioed for support from other agencies, such as Appellant Hidalgo County. (CR 24,56,139, 206).

It was not until Officer Gonzales was pursuing in Edinburg, Texas at the intersection of Trenton and Tower, that Officer Gonzales finally believed the pursuit was becoming too dangerous. (CR 25,57,140,207). Officer Gonzales however did not radio other pursuers to stop pursuit. (CR 25,57,140,207). Within a few miles and within a matter of moments of Officer Gonzalez discontinuing his pursuit while Hidalgo County was in hot pursuit, the Expedition turned left onto Curve Road and crashed into Mr. Herrera's vehicle, fatally injuring Mr. Herrera. (CR 25,57,140,207).

As the Pharr Police Department patrol officer continued his pursuit, other departments were notified to become involved and assist with the pursuit. (CR 25,57,140,207). Those departments included The Hidalgo County Sheriff's Department and Deputy Ortega. (CR 25,57,140,207). At all times material hereto, the agents, employees, servants, deputies and officers of Hidalgo County were acting in the course

4

and scope of their employment or official duties and in furtherance of their duties of the their office or employment. (CR 25,57,140,207).

The above acts and/or omissions violate the duty of care as set out in Section 546.05 of the Texas Transportation Code and the acts and/or omissions listed above amount to:

a) Violations of the duty to operate the vehicle with appropriate regard to the safety of all persons and/or

b) Amounts to a reckless disregard for the safety of others. (CR 28,29,60,61,143,144,210,211).

Appellees hired a law enforcement expert, Dr. Richard Weinblatt, who has established the following facts that occurred during the chase prosecuted by Hidalgo County which resulted in the accident that killed Mr. Herrera:

a. The Hidalgo Sheriff's Office vehicles and other units were operating in emergency mode (with lights and sirens activated at high rates of speed and disregarding normal operating traffic laws) and those actions contributed to the confusion of other drivers and danger to the public and in violation of Hidalgo County directives;

b. During the chase, a Sheriff's unit passed civilian vehicles by going around them in oncoming traffic and in posted 30 miles per hour zone at a high rate of speed;

c. Hidalgo County, through Senior Deputy Ortega as well as his Supervisors at the Sheriff's Office, were directly connected and inextricably linked to the actions of The City of Pharr Police Department;

d. Senior Deputy Ortega and his supervisors did not understand the justification for the chase and did not ask if the justification was "absent or murky;"

e. Sargent Garcia of the Pharr Police Department states that "As per the occupants of the suspect's vehicle, there was still a police unit pursuing them to this accident but not a Pharr police unit.";

f. Deputy Ortega continued to "follow them" and could not see them and they could not see him due to the "cloud of dust;"

g. Hidalgo County officers should have quickly and quite visibly turned emergency equipment off and turned around going back in their opposite direction, which they failed to do;

5

h.      Deputy Ortega disregarded the County's Pursuit Policy regarding non-marked Hidalgo County Sheriff's Office vehicles which clearly states that deputies driving unmarked county vehicles will not initiate or assist in a vehicle pursuit and that the unmarked vehicle will adhere to all State of Texas traffic regulations;

i.      Deputy Ortega turned on his emergency lights and participated in the pursuit at a high rate of speed using emergency lights with apparent lack of supervisory oversight and in violation of county policies;

j.      Deputy Ortega admitted that he was assisting the Pharr Police Department and describes this situation as a "pursuit" in his own report and described the red and blue emergency lights of the units involved in the pursuit;

k.      Deputy Ortega admitted that he actively engaged in the attempt to stop the car as he activated the unit's emergency red and blue lights and siren identifying his unit as a Sheriff's deputy but the suspect's vehicle did not stop;

l.      Deputy Ortega and other agencies never asked for the justification to be involved in a dangerous endeavor;

m.      It does not appear that deputies from Hidalgo County or their supervisors from the agency got the proper verification and justification for engaging as "assisting units in the pursuit" when their own Policy states that they are discouraged from engaging in pursuits when only minor traffic offenses have occurred;

n.      Sargent Davila who was the Hidalgo County Supervisor on duty does not appear to intervene, monitor, supervise or otherwise direct his deputies to ensure that the agency's justification for involvement actions were consistent with accepted police standards; and

o.      A reasonably prudent officer should see that a prolonged pursuit (including "following") like this through residential neighborhoods (houses were visible on the sides of the street) with many near crashes should have been discontinued almost immediately (CR 144-147,165-180,211-214).

Appellees brought suit against the City of Pharr for initiating the chase, and sued Hidalgo County for participating and ending the chase. Both entities filed pleas to the jurisdiction. The Trial Court below, after review of the evidence in the record, denied the pleas to the jurisdiction filed by the City of Pharr and Hidalgo County.

## STANDARD OF REVIEW

This is an appeal of the Trial Court's Denial of Hidalgo County's Plea to the Jurisdiction because there is a waiver of sovereign immunity that applies under the Texas Tort Claims Act (hereinafter "TTCA").

In determining whether under the TTCA the waiver is to be liberally construed, the liberal construction must be balanced with legislative intent by waiving immunity to a limited degree. *Tarrant County Hosp. Dist. v. Henry,* 52 S.W.3d 434 (Tex.App.– Fort Worth, 2001, no pet.h.)

This Court must construe the Plaintiff's petition in their favor and refuse to dismiss a case for lack of jurisdiction if plaintiff's petition supports a cause of action under the TTCA. *Hampton v. Univ. of Texas M.D. Anderson Cancer Center,* 6 S.W.3d 627, 631 (Tex. App.–Houston,[1st Dist.]1999,no pet.h.).

This Court must apply a de novo standard of review for a plea to the jurisdiction and thereby must construe the allegations in the petition as true and in favor of the Plaintiffs. *City of San Augustine v. Parrish*, 10 S.W.3d 734 (Tex. App--Tyler 1999, pet dism'd w.o.j).

## ARGUMENT AND AUTHORITY

**Reply Issue 1:** **Appellees' injuries do arise from the operation and use of a County motor driven vehicle and therefore, there is a waiver of Hidalgo County's sovereign immunity.**

Hidalgo County alleges first that the injuries do not arise from Hidalgo County's use of a motor driven vehicle. Hidalgo County's statement of the law is correct that the Supreme Court has construed the "arises from" requirement meaning the vehicle's use "must have actually caused the injury."

Hidalgo County primarily relies on Dallas Court of Appeals cases such as *The City of Dallas v. Hillis,* 308 S.W.3d 526, 534 (Tex. App. - Dallas, 2010 review denied). Appellant asserts that the *Hillis* Dallas Court of Appeals case and the case following *Hillis,*

7

*Teague v. City of Dallas,* 344 S.W.3d 434 (Tex. App. - Dallas 2011, review denied), find that when an individual is in a police chase unless the police car actually makes contact, bumps or intentionally attempts to run the car off the road, then there is no causal nexus between the conduct of the officer and the accident which caused the injury.

These two cases are directly at odds with the Texas Supreme Court case of *Travis v. City of Mesquite,* 830 S.W.2d 94 (Tex. 1992). Appellees would assert that the *Travis* case is directly on point because it also involves police officers instituting a chase of a criminal and the criminal causing an accident and injuring innocent bystanders while fleeing from the police. The Supreme Court in *Travis* states that the ultimate determination with respect to these cases is still proximate cause. The two elements of proximate cause are cause in fact and forseeability. *Id.* Cause in fact means that the act or omission was a substantial factor in bringing about the injury. Without it harm would not have occurred. The Court in *Travis* noted that the summary judgment evidence raises the inference that Atkins (the fleeing suspect) drove down the access road at excessive speeds because of the police's decision to give chase. There was evidence that the conduct of the police officer was a cause in fact of the accident in question and the injuries for which the Plaintiffs seek recovery. Furthermore, the Court in *Travis* discussed the second element of causation, forseeability which means that a person of ordinary intelligence should have anticipated the dangers that this negligent act created for others.

The Supreme Court in *Travis* went on to note that forseeability does not require that the person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. "Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a forseeable result of such negligence. There can be concurrent proximate causes of an

8

accident. <u>All persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable. When the intervening illegal negligent act is forseeable it does not negate the continuing proximate causation and consequent liability of the initial actor.</u>" *Id.* at Page 98. (Internal citations omitted) (emphasis added). The Texas Supreme Court holding in *Travis* is directly at odds with the argument that Appellant is making in their Brief to this Court.

Therefore, according to the Texas Supreme Court, the determination relating to "arises from" a motor vehicle is still a determination of proximate cause.

The Texas Supreme Court goes on to state in *Travis* that "Police officers must balance the risk to the public with their duty to enforce the law to choose an appropriate course of conduct. Public safety should not be thrown to the winds in the heat of the chase...The decision to initiate or continue pursuit may be negligent when the heightened risk of injury to third parties is unreasonable in relation to the interest in apprehending the suspects." The evidence before the Trial Court, specifically, the report of Dr. Weinblatt, establishes both the cause in fact and forseeability elements of the proximate cause standard and establish that Hidalgo County was a proximate cause of the incident in question.

Hidalgo County seems to imply that *Travis* is distinguishable because it is not a state law immunity case. This is simply not true. According to the concurring opinion by Justice Cornyn, he believed that because the officers' entitlement to immunity is dispositive of Hidalgo County's liability under the TTCA, that the issue was properly before the *Travis* court. *Id* at 100-101.

Therefore, the current law of the land, as the Texas Supreme Court has stated in *Travis,* is that even though Hidalgo County may not have initiated the pursuit and may not

9

have made contact with Quintero's vehicle, their decision to continue the chase is a cause in fact and meets the proximate cause standard. In cases involving the Texas Tort Claims Act, reasonable probability caused by the defendant's negligent act or omission means simply that it is more likely than not that the ultimate harm or condition resulted from such negligence. *Schronk v. City of Burleson,* 387 S.W.3d 692 (Tex. App. - Waco 2009, pet. denied). Cause in fact means that the act or omission was a substantial fact in causing the injury without which the harm would not have occurred. *Wise Regional Health System v. Brittain,* 268 S.W.3d 799 807-08 (Tex. App. - Fort Worth 2008, no pet.).

Furthermore, *Travis v. Mesquite* does apply to Hidalgo County because there is a disputed issue of fact as to whether or not they were in pursuit. Hidalgo County alleges they were only "assisting" and *Travis* does not apply to assisting officers. *Travis v. Mesquite* applies to the initiation and continuation of a suit and holds that proximate cause still hinges on the facts of each case. *Travis* upheld summary judgment in favor of two police officers who responded to a call for assistance. However, those police officers specifically were stopped (not moving) and were not engaged in the pursuit down an access road and in the wrong direction.

Here, there is sufficient evidence that Hidalgo County was not merely responding for assistance (as they have alleged) but was in pursuit of Quintero. The dash cam videos, which are contained in the SCR Lopez Video, are clear evidence that the Hidalgo County Sheriff's deputies were chasing Quintero and not merely "responding to assistance." According to Dr. Weinblatt, Sheriff's Deputy Lopez was passing civilian vehicles in an oncoming lane at a high rate of speed where the posted speed was thirty miles per hour. Ten seconds later the incident is announced. Therefore, there are 10 seconds on the video between reckless driving of the Sheriff's Deputy and the incident itself. There is sufficient

10

evidence to support the holding that the Sheriff's Deputies are temporally, geographically and causally connected to the accident, because their reckless driving happened within seconds of the fatal accident. In fact, *Travis v. Mesquite*, is a case that is clearly taught to Hidalgo County officers as is established by the Hidalgo County Lesson Plan. *See* APX 3.[2]

There is sufficient evidence that Hidalgo County was actually in pursuit of Mr. Quintero, which is in direct contradiction to Hidalgo County's argument. Dr. Richard Weinblatt's report provides the following evidence of such pursuit:

a.  Sargent Garcia of the Pharr Police Department states that "As per the occupants of the suspect's vehicle, there was still a police unit pursuing them to this accident but not a Pharr police unit." This statement points out that these events would not have been set in motion if it not for the officers' reckless disregard for the public and all the agencies involved were part of the chain of events (CR 232-247);

b.  "Following" for property damage monitoring as the County alleges, is a euphanism that most agencies with updated and sophisticated policies have disallowed (CR 232-247);

c.  Having erroneously chosen to enter into this scenario without being offered or demanded proper information or justification, Hidalgo County officers should have quickly and quite visibly turned emergency equipment off and turned around going back in their opposite direction, which they failed to do (CR 232-247 and SCR Lopez Video);

---

[2]Appellees include 3 exhibits in this Appendix. Appellees assert that there are exhibits that were attached to Appellees' Response to Hidalgo County's First and Second Amended Plea to the Jurisdiction and are before the Trial Court and in the District Clerk's file at the time the Trial Court denied Hidalgo County's Plea. Counsel for Appellant has indicated pursuant to telephone conversations with the District Clerk that these 3 exhibits were not (or may not be) a part of the record at the time the Trial Court ruled. There is no indication or evidence they were not part of the record because it is agreed these exhibits were attached to Appellees' Response to Hidalgo County's First and Second Amended Plea to the Jurisdiction. Appellees assert their non-inclusion (if they were not included) is a clerical or electronic formatting error caused by the inclusion of a DVD video as an exhibit. Appellees assert these exhibits should be properly considered by this Court as a part of the record and portions of these exhibits are cited to in the pleadings which are also a part of the record.

d.      Deputy Ortega admitted that he was assisting the Pharr Police Department and describes this situation as a "pursuit" in his own report and described the red and blue emergency lights of the units involved in the pursuit (CR 232-247);

e.      Deputy Ortega admitted that he actively engaged in the attempt to stop the car as he activated the unit's emergency red and blue lights and siren identifying his unit as a Sheriff's deputy but the suspect's vehicle did not stop (CR 232-247); and

f.      All of the actions by Deputy Ortega would be seen by a reasonable officer as a chase and seizure attempt (CR 232-247).

Second, in order to support their causation argument, Hidalgo County repeatedly argues that these agents were two to three minutes from the scene based on witness statements. Dr. Richard Weinblatt provides a detailed analysis that it is not consistent with commonly accepted police standards and practices to produce multiple law enforcement officials' reports and voluntary witness statements using the same or very similar verbiage. (CR 242-243) In Dr. Weinblatt's words this "creates a perception of improper witness statement gathering." Therefore, the Trial Court was correct to disregard those witness statements as not credible.

Furthermore, Appellees assert that Trooper Herrera's dash cam video establishes that The City of Pharr Officer stopped pursuing at 18:23:11 and that at 18:26:32 the DPS Officer already came upon the fatal accident with the County officials there. (SCR Herrera Video). This establishes that The City of Pharr who is actually the entity who turned away from the pursuit, took three minutes to return to the accident. Therefore, it would be impossible for the County officials, who were already on the scene, for them to also be three minutes away from the accident or else The City of Pharr and County officials would have arrived at the same time. Even if they were two to three minutes away they could still

12

be the proximate cause of the accident and the Trial Court implicitly found a fact issue of the issue in its denial of Hidalgo County's Plea.

Furthermore, a simple viewing of the video dash cam of Lopez shows that there is ten seconds from the time of the reckless driving of the Sheriff's Officer and the accident itself. (CR 232-247; SCR Lopez Video).

Therefore, there is sufficient evidence that Hidalgo County was a proximate cause of the accident in question being that they participated in and continued a pursuit that was first initiated by The City of Pharr.

The El Paso Court of Appeals in the case of *Midland v. Sullivan*, 33 S.W.3d 1 (Tex. App. - El Paso 2000) looks at the Supreme Court and says that while the Supreme Court does insist that proximate cause under the Texas Tort Claims Act requires more than mere involvement of the property, it does not hold that the property or the use of the motor vehicle be the actual instrumentality of the personal injury or death. Nor does it create some new requirement for showing a proximate cause under the Texas Tort Claims Act. Therefore, the correct standard for the operation and use of a motor vehicle that the injury arises from is the proximate cause standard. This Court should affirm the finding of the Trial Court below.

**Reply Issue 2:** **Hidalgo County is not entitled to immunity under the emergency exception because Hidalgo County's agent's actions were taken with conscious indifference and reckless disregard for the safety of others.**

The Report of Dr. Richard Weinblatt produces sufficient evidence which refutes the argument that Hidalgo County was acting in good faith. The Report of Dr. Weinblatt, an experienced police officer and educator, establishes that Hidalgo County (through its agents), operated with conscious disregard for public safety and were reckless. (CR 232-

13

247). Weinblatt points out the following evidence (and other evidence) that establishes Hidalgo County was acting recklessly, in conscious disregard for the safety of the public and not in good faith:

a. The Hidalgo Sheriff's Office vehicles and other units were operating in emergency mode (with lights and sirens activated at high rates of speed and disregarding normal operating traffic laws) and those actions contributed to the confusion of other drivers and danger to the public and in violation of Hidalgo County directives (CR 232-247; SCR Lopez Video);

b. During the chase, a Sheriff's unit passes civilian vehicles by going around them in oncoming traffic and in posted 30 miles per hour zone at a high rate of speed (CR 232-247; SCR Lopez Video);

c. Hidalgo County, through Senior Deputy Ortega as well as his Supervisors at the Sheriff's Office, are directly connected and inextricably linked to the actions of The City of Pharr Police Department and if the reasonableness foundation for the pursuit crumbles, so should all of the events that come afterward (CR 232-247; SCR Lopez Video);

d. It was incumbent upon Senior Deputy Ortega and his supervisors to understand the justification for the chase and ask if the justification was "absent or murky" ((CR 232-247; SCR Lopez Video);

e. For Senior Deputy Ortega and his supervisors to engage in the chase and/or assist (which is the same) which by its very nature is known to be a very dangerous activity and to not know the chase's justification, is irresponsible and demonstrates reckless disregard for the public's safety (CR 232-247; SCR Lopez Video);

f. Senior Deputy Ortega evidences a lack of good faith for initiating, engaging and continuing the pursuit based on weak, legally faulty, or non existent justification for the pursuit (CR 232-247; SCR Lopez Video);

g. Sgt. Garcia of the Pharr Police Department states that "As per the occupants of the suspect's vehicle, there was still a police unit pursuing them to this accident but not a Pharr police unit." This statement points out that these events would not have been set in motion if it not for the officers' reckless disregard for the public and all the agencies involved were part of the chain of events (CR 232-247);

h. It is commonly acceptable police standards and practices that the danger of the situation should not outweigh the justification for their involvement, and Hidalgo County Sheriff's Officer Deputy Ortega made a willful decision to

14

ignore this and the Sheriff's Office supervisors did not intervene as is their duty (CR 232-247; SCR Lopez Video);

i. Deputy Ortega continued to "follow them" and could not see them and they could not see him due to the "cloud of dust" (CR 232-247; SCR Lopez Video);

j. Having erroneously chosen to enter into this scenario without being offered or demanded proper information or justification, Hidalgo County officers should have quickly and quite visibly turned emergency equipment off and turned around going back in their opposite direction, which they failed to do (CR 232-247; SCR Lopez Video);

K. The Hidalgo County Sheriff's Office Pursuit Policy is vague and lacks sufficient detail to allow the deputies to adequately formulate fast moving decisions under the weight of a stressful event and there is barely any mention made of supervisor responsibilities or assisting other agencies (CR 232-247; APX 1);

l. The Hidalgo County Sheriff's Office is grossly negligent and reckless allowing such a policy to exist and continue uncorrected (CR 232-247; APX 1);

m. Deputy Ortega was driving an unmarked Sheriff's vehicle and involved himself willfully in the pursuit in question, which was contrary to commonly accepted police standards and practices and which was contrary to his own agency's written directives (CR 232-247; APX 1 & 2);

n. Deputy Ortega disregarded the County's Pursuit Policy regarding non-marked Hidalgo County Sheriff's Office vehicles which clearly states that deputies driving unmarked county vehicles will not initiate or assist in a vehicle pursuit and that the unmarked vehicle will adhere to all State of Texas traffic regulations (CR 232-247; APX 1 & 2);

o. Deputy Ortega turned on his emergency lights and participated in the pursuit at a high rate of speed using emergency lights with apparent lack of supervisory oversight and in violation of county policies (CR 232-247; APX 1 & 2);

p. In violation of commonly accepted police practices, Deputy Ortega and other agencies never asked for the justification to be involved in a dangerous endeavor (CR 232-247);

q. It does not appear that deputies from Hidalgo County or their supervisors from the agency got the proper verification and justification for engaging as "assisting units in the pursuit" when their own Policy states that they are discouraged from engaging in pursuits when only minor traffic offenses have occurred (CR 232-247);

r.    There were no supervisory deputies involved and there was no confirmation that "narcotics" were involved (CR 232-247);

s.    Sargent Davila who was the Hidalgo County Supervisor on duty does not appear to intervene, monitor, supervise or otherwise direct his deputies to ensure that the agency's justification for involvement actions were consistent with accepted police standards (CR 232-247);

t.    A reasonably prudent officer should see that a prolonged pursuit (including "following") like this through residential neighborhoods (houses were visible on the sides of the street) with many near crashes should have been discontinued almost immediately (CR 232-247);

u.    Based on the weak reasoning behind Officer Gonzalez' initiation of the pursuit, the assisting agencies should not have commenced, continued, or assisted in the chase and doing so constituted a conscious disregard for public safety (CR 232-247); and

v.    Aiding and assisting only exacerbated the dangerousness of the situation which was compounded by the Hidalgo County Sheriff's Office command and supervisory structures' weak policy formulation, lax rule enforcement, no supervisory oversight, non-existent post action command level review, and no evident disciplinary and corrective action taken in response to the incident (CR 232-247).

The Trial Court found sufficient evidence to support at least a fact issue as to Hidalgo County's recklessness and conscious disregard for public safety and this Court should find the same and affirm the decision of the Trial Court.

**Reply Issue 3:    Hidalgo County is liable because Deputy Ortega is not entitled to official immunity because he was not acting in good faith.**

Appellees assert that the evidence (that has already been described and through the Report of Dr. Weinblatt) establishes that no reasonable officer would have taken the actions that Deputy Ortega took. Dr. Weinblatt says so on Pages 6, 7, 8, and 14 of his report. (CR 232-247). The Trial Court implicitly found that there was a fact issue on this very issue of whether no reasonable officer would have taken the actions that led to the accident. The evidence in the record continues to support this finding. Therefore, Ortega

16

and his supervisors were not acting in good faith and are not entitled to official immunity and the County is therefore not immune to suit and/or liability. The Report of Dr. Weinblatt states that no reasonably prudent officer would have taken such action. (CR 232-247). This expert report, which was not excluded, defeats Hidalgo County's claims on appeal. This Court should affirm the order of the Trial Court below.

According to a case out of this Court, *Cameron County v. Alvarado*, 900 S.W.2d 874 (Tex.App.–Corpus Christi, 1995), Hidalgo County has failed to meet any legal standard in order to overturn the trial court's denial of their Plea to the Jurisdiction based on "good faith". The *Alvarado* case is identical to the facts in this case in that the injuries to innocent bystanders were a result of a fleeing driver from Cameron County Sheriff's deputies and a high speed chase. In that case the trial court denied a summary judgment and this Court affirmed. This Court of Appeals held that official or qualified immunity is an affirmative defense, and that Hidalgo County has the burden to establish all essential elements of the defense. *Id.* at 879.

This Court found that the affidavits of the officers did not provide any evidence to meet the good faith standard by citing to objective standards of what a "reasonably prudent officer" would do. *Id.* at 880. Furthermore, the affidavits did not make any reference to the need to apprehend the suspect as outweighing a clear risk of harm to the public. *Id.* The Affidavit of Deputy Ortega in this case also fails to establish good faith and has none of the elements this Court requires to support a "good faith defense". Therefore, there is no evidence of good faith and Hidalgo County has not met their burden.

**Reply Issue 4:** **Dr. Richard Weinblatt is a qualified expert and his Report is relevant, reliable and not conclusory.**

It is clear from Appellant's Brief that Hidalgo County is not actually complaining about the methodology of Dr. Weinblatt, but is objecting to the conclusions he has made. This is improper for a Daubert/Robinson Challenge which is the error complained of on appeal. Appellant has disguised its challenge to Dr. Weinblatt's conclusions as a challenge to the reliability of his methodology. *See State v. Smith*, 335 S.W.3d 706, 714 (Tex. App.–Houston [14th Dist.] 2011, pet. ref'd) (holding that "issues of credibility and reliability are not the same and that a jury should evaluate a witness's credibility"). *See also Waring v. Wommack*, 945 S.W.2d 889, 893 (Tex. App.–Austin 1997, no writ) (objection to accident-reconstruction expert's testimony was directed primarily at his conclusions, not the reliability of his theory or methodology; accuracy of conclusions "reached by an expert whose theory and methodology are reliable may be challenged by cross-examination").

Defendant asserts that Dr. Richard Weinblatt's Report is conclusory, yet has provided no argument nor any factual basis to support its argument that his report is conclusory. On the other hand, Dr. Richard Weinblatt's sixteen (16) page Report is detailed in its analysis and provides citations to the evidence that he uses and provides the factual basis for every single opinion upon which opines.

Defendant next claims that Dr. Weinblatt's Report does not specify the type of expertise he claims to have. This is not true. The Report states the following: "This report is based on my education, training, and experience as a law enforcement officer, police chief, police academy instructor and director, writer, trainer and educator including as a large college Dean over a myriad of areas including public safety relevant programs such

18

as: Criminal Justice, Public Safety, Fire Science, EMS, and Homeland Security." In each of the opinions, Dr. Weinblatt states that he is providing opinions on commonly accepted police standards and practices. He then states on page 16 under his Expert's Conclusion, that based on his training, education, and experience, that his expert opinion is that "Hidalgo County and the City of Pharr did not operate within the high standards commonly and reasonably expected of law enforcement professionals in the performance of their official duties." He states clearly that, "a reasonable and prudent officer should see that a prolonged pursuit (including "following") like this, through residential neighborhoods, should have been discontinued almost immediately." By failing to do so "constituted a conscious disregard for public safety," which is the very definition of recklessness.

A single reading of Dr. Weinblatt's Report as a whole will show that he refers to (1) police policies of the agencies, (2) refers to the dash cam video tapes, (3) refers to internal City and County memorandum, (4) refers to affidavits of the officers and of the witnesses in question, and (5) refers to nearly every document of relevant evidence in the file.

Just as Appellant does in this Brief, Appellees hereby fully incorporate their Response (and exhibits attached thereto) to Hidalgo County's Motion to Exclude Expert Report herein. This Court should affirm the Trial Court's holding in this matter.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED Appellees herein, Dora Herrera, Individually & as Representative of the Estate of Reynaldo Herrera, Deceased, Eric Herrera, Efren Herrera, Michael Herrera, Jessica Herrera Rodriguez, Celia Herrera, Vanessa Herrera, Veronica Herrera Rodriguez Herrera and Rey Herrera, pray that this Court dismiss Appellant's appeal from affirming the decision of the Trial Court below that denied Hidalgo County's Plea to the Jurisdiction, and implicitly denied Hidalgo County's

Motion to Exclude Dr. Richard Weinblatt's Expert Report, and for such other relief as Appellees are justly entitled to receive.

Respectfully submitted,

**SNIDER LAW FIRM, PLLC**

_____
Wyatt D. Snider
State Bar No. 24039185
3535 Calder, Suite 300
Telephone: (409) 924-9595
Facsimile: (409) 924-0808
wyatt@sniderlawfirm.com

**KENO VASQUEZ LAW OFFICE**
Librado Keno Vasquez
State Bar No.00797594
3525 West Freddy Gonzalez Drive, Suite C
Edinburg, Texas 78539
Telephone: (956) 316-1935
Facsimile: (956) 316-1936

**ATTORNEY FOR APPELLEES**

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel for the Plaintiffs/Appellees, hereby certifies that this Amended Reply Brief complies with Texas Rules of Appellate Procedure 9.4 and contains approximately 7,036 words, inclusive of everything in the Reply Brief.

_____
Wyatt D. Snider

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record, in accordance with the Texas Rules of Civil Procedure this 13th day of November, 2015.

Preston Henrichson           **VIA E-FILE**
Law Offices of Preston Henrichson
222 W. Cano
Edinburg, Texas 78539

_____
Wyatt D. Snider

No. 13-15-00167-CV

_____

IN THE COURT OF APPEALS

FOR THE THIRTEENTH DISTRICT OF TEXAS

AT EDINBURG, TEXAS

_____

HIDALGO COUNTY, TEXAS

APPELLANT

V.

DORA HERRERA, ET AL,

APPELLEES

_____

Original Appellate Proceeding from the County
370th District Court - Hidalgo County, Texas

_____

APPENDIX

_____

1    Pursuit Driving Policies of Hidalgo County (HC00048-49)

2    Sheriff Trevino's Interoffice Memorandum (HC00051)

3    Lesson Plan for Emergency Police Driving Course (HC00053-62)

6.05      <u>PURSUIT DRIVING</u>

Effective Date: 5-31-2006

Deputies pursue vehicles as necessary to apprehend law violators as long as such pursuits do not <u>unreasonably endanger</u> the deputy or the public. Pursuits should <u>only</u> be made <u>as</u> is <u>consistent with</u> applicable <u>legal guidelines</u>.

Deputies are discouraged from engaging in pursuits when only minor traffic offenses have occurred.

<u>AFFECTS</u>: All Employees

6.05.01      <u>INITIATING AND DIRECTING PURSUIT</u>

<u>A Deputy considers the seriousness of the offense committed and balances the need for pursuit and apprehension against the probability and severity of damage or injury</u>, thus reducing the possibility of civil liability.

The Deputy in the initiating pursuit unit may request an additional unit(s) and direct that unit(s) as to assistance needed unless a supervisor gives other directions. All employees observe radio silence necessary to the proper conduct of the pursuit. The dispatcher immediately repeats essential radio traffic to all units on the frequency used by the initiation pursuit unit.

6.05.02      <u>TERMINATING PURSUIT</u>

In heavy traffic, densely populated areas, or other hazardous conditions, units may abandon pursuit of a reckless evader when the following factors exist:

1. The reckless evader's current violation, the incident that prompted the pursuit, involved only a minor traffic offense;

2. The reckless evader has not committed any felony during the pursuit; and

3. The deputy has no good reason to believe that the reckless evader is attempting to escape from apprehension for any felony.

Deadly force, including use of the vehicle or firearms, is used only in accordance with 7.02.



Except when directed otherwise by a supervising Deputy, units abandon the pursuit if an unreasonable danger to life becomes apparent.

The pursuit is terminated on the direct or indirect (by dispatcher) order of a supervisor.

HC 00049



# HIDALGO COUNTY SHERIFF'S OFFICE

## SHERIFF GUADALUPE "LUPE" TREVIÑO

### INTEROFFICE MEMORANDUM

TO:     All Command Staff and Law Enforcement Personnel

FROM:   Lupe Trevino, Sheriff

DATE:   August 2, 2005

RE:     Non-Marked Hidalgo County Sheriff's Office Vehicles and Pursuits

Effective immediately and until the issue is fully researched, Hidalgo County Sheriff's Office Deputies driving an unmarked HCSO vehicle will not initiate or assist in a vehicle pursuit. It is suggested that any HCSO unmarked vehicle that finds itself in a potential pursuit situation simply keep the suspect vehicle under visual surveillance until a marked unit can come to assist. The unmarked HCSO unit that has a suspect vehicle under visual surveillance will adhere to all State of Texas traffic regulations. Depending on the severity of the situation, all HCSO deputies posses discretionary authority in their decision making process. The safety and security of the citizens of Hidalgo County remains our number one priority. We must not in anyway contribute to the violation of this principle. For the purposes of this directive an unmarked HCSO vehicle is one that lacks emergency overhead lights and side distinctive HCSO graphics. Violations of this directive will be met within the scope of the HCSO disciplinary continuum.



HC 00051

# LESSON PLAN COVER SHEET

SUBJECT: Police Driving

UNIT: Emergency Vehicle Operations Course

INSTRUCTOR: Senior Deputy Steve Cortez / Sgt. Victor Valdez  PHONE: 956-381-7979

TIME ALLOTTED: 24 hours

INSTRUCTIONAL AIDS: Lesson Plan; PowerPoint Presentation; Training Videos ; Patrol Unit, dry erase board, handouts

STUDENT MATERIALS: Pen and Paper, Emergency Vehicle Operations Handout

PREREQUISITE EXPERIENCE OF THE LEARNERS: Students must be certified Peace Officers or currently enrolled in a Basic Peace Officer Academy. All Students must possess a valid driver's license.

GOAL (PURPOSE OF THE COURSE): Upon successful completion of this course, students will be able to operate a motor vehicle under emergency conditions while minimizing exposure to injury, loss of property, and liability.

DATE PREPARED: 07-01-2010          DATE REVISED:

PREPARED BY: Senior Deputy Steve Cortez          REVISED BY:

HC 00053

# INSTRUCTOR LESSON PLAN

SUBJECT: Patrol Tactics
UNIT: Traffic Stops & Officer Safety

LESSON OBJECTIVES (Specific points of information to complete the goal statement):

1.  The student will be able to explain the criminal and civil implications of operating a vehicle under emergency conditions.

2.  The student will be able to explain how physical laws and forces apply to vehicle performance.

3.  The student will be able to discuss basic aspects/ considerations of emergency driving.

4.  The student will be able to demonstrate the ability to negotiate the serpentine road course.

5.  The student will be able to demonstrate controlled braking techniques.

6.  The student will be able to demonstrate the ability to avoid obstacles by making evasive lane changes at various speeds.

7.  The student will be able to demonstrate the ability to perform backing, braking, evasive lane changes, and turns.

8.  The student will be able to demonstrate the ability to perform specified backing procedures through the designated backing road course.

9.  The student will be able to demonstrate the ability to maneuver a vehicle in confined spaces using precision maneuvering techniques.

HC 00054

# INSTRUCTOR'S LESSON PLAN

I. PREPARATION (STUDENT MOTIVATION/OPENING STATEMENT)

II. PRESENTATION (Implementation of Instruction)

| KEY TOPIC POINTS | ELABORATION ON KEY POINTS |
|---|---|

MODULE ONE: LEGAL ASPECTS OF EMERGENCY DRIVING

    A. State Law

        1. Chapter 546 Texas Transportation Code: Operation of Authorized Emergency Vehicles

    B. HCSO Policy

    C. Case Law

        1. Monell v. New York City, Department of Social Services

        2. Canton v. Harris

        3. Tennessee v. Garner

        4. Brower v. Inyo County

        5. Travis v. Mesquite

    D. Factors Establishing Civil Liability

        1. Operator owed the injured party a duty not to engage in certain conduct.

        2. Operator's actions violated that duty.

        3. Operator's negligent conduct was the proximate cause of the collision.

        4. Injured party suffered actual and provable damages.

HC 00955

C. Rules of Pursuit
　1. Use of emergency equipment.
　2. Keep safe distance.
　3. Scan Intersections.
　4. Pass vehicles only when safe.
　5. Never block the road with your vehicle.
　.6. Never pull alongside the pursued vehicle.
　7. Never discharge your firearm from a moving vehicle.
　8. Do not ram the vehicle being pursed.
D. When to Call Off a Pursuit
　1. When the risk outweighs the benefit, use good judgment and apply policies.

## MODULE TWO: PHYSICAL FORCES AND VEHICLE DYNAMICS

A. Newton's Laws of Motion

　1. Law of Inertia

　2. Law of Acceleration

　3. Law of Action and Reaction

B. Forces Affecting a Moving Vehicle

　1. Vehicle Dynamics vs. Vehicle Control

　2. Kinetic Energy

　3. Coefficient of Friction

　4. Inertia

　5. Centripetal Force

　6. Centrifugal Force

C. Traction Forces and Weight Transfer

　1. Acceleration

　2. Deceleration

　3. Turning

　4. Positive Weight Shift

　5. Negative Weight Shift

6. Lateral Weight Shift

D. Physical Factors and Basic Vehicle Performance

   1. Tire Construction

   2. Tread/ Rubber Compound

   3. Tread Pattern

   4. Directional Tires

   5. Road Surface

   6. Environmental Conditions

   7. Vehicle Speed

## MODULE THREE: THE BASICS OF EMERGENCY DRIVING
A. Components of the Driving System

   1. The vehicle.

   2. The environment

   3. The driver

B. Ride and Handling

   1. Ride: The vertical motion of the tires as they move over irregularities on the road surface.

   2. Handling: The ability of the vehicle to remain in control when cornering or when being driven through an evasive maneuver.

C. Components of Good Driving

   1. Awareness

   2. Space Management

   3. Collision Avoidance

D. Elements of a Vehicle Safety Inspection

   1. Fluid levels: oil, power steering fluid, brake fluid, and engine coolant

   2. Tires: air pressure, tread depth, and deformities

E. Proper Seating and Hand Position

HC 00657

F. Steering Techniques

    1. Under Steer

    2. Over Steer

    3. Neutral Steer

    4. Shuffle Steering

    5. Crossover Steering

    6. Hand Over Hand Steering

G. Approved Turn Around Maneuvers

    1. U-Turn

    2. Three-Point Turn

H. Calculating Reaction Time in Distance Traveled (MPH to FPS)

    1. Quick Method: MPH/ 0.5 + original MPH= FPS

    2. Mathematically: MPH x 1.466 = FPS

I. Braking Methods

    1. Stab and Jab

    2. Heat and Cool

    3. Threshold Breaking

    4. Anti-Lock Breaking Systems

J. Skids and Skid Control

    1. Rules for Skid Control

        a. Let off the accelerator

        b. Push in the clutch

        c. Counter steer to correct for the skid

        d. Do not use the brake until steering control has been regained

HC 00058

2. Six Deadly Skids

    a. Front-wheel breaking skid

    b. Rear-wheel breaking skid

    c. All-wheel breaking skid

    d. Power skid

    e. Spin out

    f. Hydroplaning

K. Nighttime Driving Hazards

    1. Vehicle Headlights

    2. Headlight Reflection

    3. Minimizing Night Driving Hazards

        a. Do not overdrive headlights

        b. Keep eyes moving

        c. Use light wisely

        d. Protect eyes from glare

        e. Keep windshields and headlight lenses clean

        f. Make it easy for other to see you

        g. Avoid steady driving at the hour of usual bedtime

# MODULE FOUR: SERPENTINE ROAD COURSE
A. Standards

    1. Entry speed: 25, 30, 35 mph minimum

    2. Exit speed: not less than 35 mph

    3. Hand positions: 9 and 3

    4. Negotiate exercise without using brakes

    5. Steering: smooth

HC 00059

# MODULE FIVE: CONTROLLED BRAKING ROAD COURSE
## A. Standards

1. Maintain directional control of vehicle while braking

2. Overcome the loss of steering control due to braking

3. Develop the ability to ease pressure on the brakes the instant loss of steering control is sensed

4. Develop the shuffle steering technique

5. Develop confidence in having the ability to perform the maneuver

6. Negotiate the course without striking any cones

7. Stop at or before reaching the second barrier with the front of the vehicle

# MODULE SIX: EVASIVE LANE CHANGE ROAD COURSE
## A. Standards

1. Demonstrate the maneuvering capability and stability of the vehicle

2. Train the student to evaluate his/her reaction time

3. Demonstrate smooth steering and concentration

4. Develop the ability to steer around an obstacle

5. Make the student more aware of time vs. distance

6. Overcome the tendency to slam on brakes in an emergency

# MODULE SEVEN: OBSTACLE COURSE
## A. Standards

1. Demonstrate the importance of controlling one's emotions while driving

2. Demonstrate the importance of driving within one's limitations

3. Develop the confidence in being able to perform the maneuvers

HC 00860

## MODULE EIGHT: BACKING COURSE
### A. Standards

1. Develop the ability to control a vehicle while it is moving in reverse

2. Demonstrate vehicle dynamics involved in backing

3. Train the student to maintain constant vision to the rear

4. Develop the confidence in being able to perform the maneuver

## MODULE NINE: PRECISION MANEUVERING COURSE
### A. Standards

1. Negotiate the course smoothly

2. Develop smooth steering

3. Develop threshold braking and the ability to brake during straight line travel

4. Develop confidence in driving ability

---

III.  APPLICATION: Planning for student to practice or apply new knowledge.

---

QUESTION AND ANSWERS FROM STUDENTS DURING THE PRESENTATION. The student will actively participate in classroom discussions and classroom activities. The student will receive approximately 16 hours of practical driving time utilizing the driving techniques taught in the classroom.

HC 00961

IV.    EVALUATION: Final check of the student's comprehension of material presented.

Final student evaluations will be done via written examination and practical driving exams.

REFERENCES:

1. 2009-2010 Texas Criminal And Traffic Laws

2. Hidalgo County Sheriff's Office Policy And Procedure Manuel

3. Texas Engineering Extension Service (TEEX) Emergency Vehicle Operations Instructor Guide and Student Participant Manuel

HC 0Q062